**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| | : | |
| | : | |
| **GERALDINE SMALLS,** | : | **OPINION** |
| | : | |
| Plaintiff, | : | **Civ. No. 02-0567 (WHW)** |
| | : | |
| v. | : | |
| | : | |
| **MICHAEL J. ASTRUE,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

**Walls, Senior District Judge**

Plaintiff Geraldine Smalls seeks review of the final determination of the Commissioner of Social Security ("Commissioner") which denied her claim for disability insurance benefits and supplemental security income pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The Court reverses that determination and remands the case to the Commissioner for further proceedings consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY**

**I. Procedural History**

**A.  Ms. Smalls' April 24, 1997 Application**

Ms. Smalls applied for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income benefits on April 24, 1997.  (Tr. 100-103, 114-135.)  After her claims were denied at the initial and reconsideration levels, (Tr. 71-82), Ms. Smalls requested a

NOT FOR PUBLICATION

hearing to review the application before an administrative law judge ("ALJ"), which was held on November 16, 1998.  (Tr. 15, 26, 83-89.)

The ALJ reached an unfavorable decision on January 25, 1999, reasoning that Ms. Smalls was not disabled because there were jobs in the national economy she could perform.  (Tr. 12-23.)   Ms. Smalls requested a review of the hearing decision by the Appeals Council in August of 1999.  (Tr. 8-9.)  Her request was denied on December 7, 2001, and the ALJ's decision became the final decision of the Commissioner.  (Tr. 3-5.)

### B. Ms. Smalls' August 4, 1999 Application

Ms. Smalls filed a subsequent application for Disability Insurance Benefits and Supplemental Security Income payments for the period of January 26, 1999 to October 23, 2000. Both claims were initially denied, but were approved on reconsideration, with the onset date of disability being October 23, 2000.  Upon plaintiff's request, a hearing was held on June 12, 2002. At this hearing, a different ALJ found that the Ms. Smalls was disabled as defined by the Social Security Act for the period from January 26, 1999 through October 22, 2000.

In light of these findings, Ms. Smalls is requesting an earlier onset date for her disability benefits, specifically, from April 8, 1997 through January 25, 1999.  (Pl.'s Br. at 4.)

## II.  Personal & Employment History

Geraldine Smalls, was born on October 22, 1949.  (Tr. 21, 100.)  She currently resides with her daughter, who supports her financially.  (Tr. 32-33.)  Before the alleged onset of her disability in 1997, Ms. Smalls worked as a crossing guard for two months.  (Tr. 34-35.)  Before this, Smalls has worked as a home health aide since at least 1994.  (Tr. 33-35, 45, 166-9.)  This

NOT FOR PUBLICATION

job required her to stoop, climb, and lift and carry up to 100 pounds.  (Tr.  167-9.)  Ms. Smalls

testified that she could no longer wo rk as a home heath aide due to her disability.  (Tr.  46-47.)

Smalls claims that pains in her hands, fingers, shoulders, knees, right ankle, right arm,

and right hip prevented her from working.  (Tr. 28-56.)   Ms. Smalls is unable to wash dishes,

engage in housekeeping activities, wash laundry, or sew.  (Tr. 37, 39.)  She stated that she can

"just barely" lift a gallon of milk and has problems carrying things.  (Tr. 40.)  Ms. Smalls has

trouble sitting or standing for long periods of time.  (Tr. 40.)

### III.  Medical History

#### A. Medical Evidence Submitted Before ALJ Decision was Issued on January 25, 1999

From 1988 to 1998 Ms. Smalls has seen at least five physicians who have examined her

and diagnosed her with osteoarthritis.  She has been a patient of Dr. Mark Goldberg of the

Passaic Internal Medicine Group, P.A. since 1988.  On November 30, 1992, Dr. Goldberg

diagnosed her with osteoarthritis in both knees on the basis of a joint assessment and

radiographic evidence.  His documentation from a  mid-1997 report indicates crepitation in both

knees, Ms. Smalls' complaints of pain, discomfort, stiffness, and swelling in her knees, and her

difficulty in standing and walking.  (Tr. 264-66; 290-994.)  His notes from October 31, 1997

reflect that she complained to him of pain in her hands, fingers and the right side of her lower

back.  (Tr. 264.)

From 1994 to 1997, Ms. Smalls was also a patient of Dr. Dominic Glorioso of the

Paterson Community Health Center.  In a May 1, 1997 letter to the New Jersey Department of

Labor, Dr. Glorioso wrote that Ms. Smalls had a history of degenerative joint disease of her

**NOT FOR PUBLICATION**

knees and that, as of March 1997, her "arthritis was controlled with Tylenol." (Tr. 188.)  In an

August 12, 1997 follow-up letter, Dr. Glorioso wrote that "Ms. Smalls has arthritis involving her

knees and low back." (Tr. 197.)

Dr. Ronald Bagner, M.D. examined Ms. Smalls on June 11, 1997 and concluded that she

had "degenerative arthritis of the knees." (Tr. 190-91.)  He noted that Ms. Smalls walked "with a

marked right side limp," and had "moderate difficulty" getting off and on the examination table

and "heel and toe walking." (Tr. 191.)  Her knees had a limited range of motion, and their

movement caused crepitus and pain to Ms. Smalls.  She also showed diffuse tenderness and

small effusions in her knees.  (Tr. 191.)

Dr. Bagner also observed that Ms. Smalls did not walk using a cane or crutches, was not

uncomfortable in a seated position during the interview, and did not have trouble getting dressed

and undressed without assistance  (Tr. 190-91.)  He found a normal range of motion in the lower

back, cervical area, shoulders, elbows, forearms, wrists, fingers, hips, and ankles.  (Tr. 190-91.)

In a November 1998, Ms. Smalls' new physician, Dr. Karen Yung, confirmed Ms. Smalls

earlier diagnoses of arthritis.  (Tr. 304-307.)   Dr. Yung found that older x-rays confirmed

osteoarthritis in both knees and revealed slight narrowing along the medial [sic] aspect of both

knees.  She also found that Ms. Smalls left knee could only bend 45 degrees, but did not notice

any swelling or tenderness to the knees.

In 1997 and 1998, two physicians conducted functional capacity assessments designed to

determine Ms. Smalls's ability to do work-related activities.  Dr. Raymond Briski completed a

functional capacity assessment of the plaintiff in June 1997.  (Tr. 140-47.)  He determined that

-4-

NOT FOR PUBLICATION

Ms. Smalls' had certain exertional limitations.  She could: "occasionally" lift or carry only ten

pounds; "frequently" lift or carry less than ten pounds; "stand and/or walk (with normal breaks)

for a total of at least two hours per day", "sit (with normal breaks) for about six hours in an

8-hour workday"; and engage in "unlimited" pushing or pulling maneuvers.  (Tr. 141.)  Doctor

Briski also reported that Ms. Smalls had certain postural limitations: she could only

"occasionally" climb, balance, stoop, kneel, crouch, and crawl. (Tr. 142.)  Dr. Briski found that

she had no manipulative, visual, communicative, or environmental limitations.  (Tr. 142-44.)

Franciso Miranda, M.D. concurred with Dr. Briski's assessment on September 2, 1997.  (Tr.

147.)

On November 2, 1998, Dr. Yung assessed Ms. Smalls' ability to do work-related

activities.  (Tr. 299-303.)  Dr. Yung concluded that Ms. Smalls faced numerous exertional

limitations from her knee pain.  She could not lift any amount of weight, but could occasionally

carry up to twenty pounds.  She could sit for six hours over an eight-hour workday, but only for

one hour without interruption.  She could walk or stand for one hour each during a workday,

albeit not continuously.  Dr. Yung also concluded Ms. Smalls had significant postural

limitations.  She could never climb, kneel or crawl, but could stoop occasionally and balance

continuously.  Dr. Yung also found that Ms. Smalls could: "occasionally" reach, handle, and

push/pull; "frequently" engage in fine manipulation; and "continuously" balance, feel, hear and

speak, and engage in fine manipulation.  She also reported that plaintiff could frequently use both

hands for simple grasping and could continuously use both hands for fine manipulation.

**B.  Medical Evidence Submitted After ALJ Decision was Issued on January 25, 1999**

NOT FOR PUBLICATION

Plaintiff submits medical reports and opinions from Dr. Yenni, Dr. Fakhimi, Dr. Vassallo, and Dr. Yung which were submitted to the Appeals Council but were not before the ALJ.  (Tr. 388-409.)  Though the Appeals Council declined to hear the case, it entered the evidence as part of the record.  (Tr. 3-4.)

The Court will not consider this evidence because it does not meet the standard for admission of such evidence articulated by the Third Circuit in Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001).  Matthews states that "when the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the commissioner only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ." 239 F.3d at 593 (citing Keeton v. DHHS, 21 F.3d 1064, 1067 (11th Cir. 1994)).

Evidence is "new" so long as it is "not merely cumulative of what is already in the record." Szubak v. Sec'y of HHS, 745 F.2d 831, 833 (3d Cir. 1984) (citing Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981)).  Evidence is "material" if it is "relevant and probative" and creates "a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination."  Id.  Implicitly, material evidence must "relate to the time period for which benefits were denied."  Id. (citing Ward v. Schweiker, 686 F.2d 762, 765 (9th Cir. 1982)).

There is no specific requirement articulating "what type of situation might fulfill the 'good cause' requirement for 'new evidence' remands."  See Brown v. Schweiker, 557 F. Supp. 190, 191-2 (D.C. Fla.1983).  It has been suggested that "some justification for the failure to acquire and present such evidence to the Secretary would be appropriate."  Id. at 192 (citing Birchfield v. Harris, 506 F. Supp 251 (E.D.Tenn 1980)).  The Third Circuit explained that "to

NOT FOR PUBLICATION

order remand for each new item of new and material evidence would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand." Matthews, 239 F.3d at 595.  See also Eads v. Sec'y of Health and Human Services, 983 F.2d 815, 817-18 (7th Cir. 1993).

The evidence from Drs. Yenni, Fakhimi, and Vassallo does not pertain to the time period for which the benefits were denied, April 8, 1997 to January 25, 1999, and so is immaterial.  The report submitted by Dr. Yenni concerns Ms. Smalls' condition in November 1999 at the earliest. (Tr. 407.)  Dr. Vassallo examined Ms. Smalls for the first time on June 15, 2001, nearly two years after the ALJ's decision. (Tr. 408.)  Dr. Fakhimi only began treating the plaintiff in September 1999.  (Tr. 388-89, 397-98.)

Although Dr. Yung has been treating the Ms. Smalls since before the initial ALJ opinion was issued, her additional records and reports, marked Exhibits C and D, will not be considered by this Court.  Exhibit C, which contains treatment records from November 1998 to April 2001 and a general medical report completed by Dr. Yung on May 1, 2001 will not be considered because plaintiff fails to articulate why this evidence is not merely cumulative of the record.  Nor has plaintiff offered any good cause as to why this evidence should be considered.  Exhibit D, which reports x-ray findings from May 25, 1999, will not be considered because the evidence does not pertain to the time period at issue.

## LEGAL STANDARD

### I.  Standard of Review

NOT FOR PUBLICATION

This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).  The district court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Metro Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  While substantial evidence must have real probative weight it "may be less than a preponderance."  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard v. Sec'y of HHS., 841 F.2d 57, 59 (3d Cir. 1988)).

"Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'"  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  Cursory conclusions unsupported by evidence cannot justify a decision.  Id.  "[A] reviewing court may remand a case to the Secretary for good cause, 'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'"  Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).

To determine if substantial evidence supports the Commissioner's decision, the reviewing court must consider: "(1) objective medical facts; (2) diagnoses and expert opinions of examining physicians; (3) subjective evidence of pain; and (4) the claimant's educational background, work history and age."  Snee v. Sec'y of HHS., 660 F. Supp 736, 738 (D.N.J. 1987).  Accord Balock v.

NOT FOR PUBLICATION

Richardson, 483 F.2d 773, 776 (4th Cir. 1972).  To avoid "judicial usurpation of administrative

functions" a court will affirm the administrative decision if it is "accompanied by a clear and

satisfactory explanation of the basis on which it rests."  Id.  Otherwise, remand is appropriate.

Cotter v. Roberts, 642 F.2d 700, 705 (3d Cir. 1981).

**II.  Standard for the Commissioner's Determination of Disability**

       Disability is defined by the Social Security Act as the "inability to engage in any

substantial gainful activity by any reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

       The Commissioner must follow a five-step sequential process to determine if an applicant

is disabled and eligible for Social Security disability benefits.  20 C.F.R. § 404.1520.  First, the

Commissioner must determine whether the claimant is currently engaged in "substantial gainful

activity."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  "Substantial gainful activity" is

"the performance of significant physical or mental duties . . . for remuneration or profit."

Chicager v. Califano, 574 F.2d 161, 163 (3d Cir. 1978); 20 C.F.R. §§ 404.1572, 416.972.

        Second, if the claimant is not engaged in "substantial gainful activity" then the ALJ must

determine if the claimant is suffering from a "severe impairment."  Plummer, 186 F.3d at 428.  A

severe impairment is defined as "any impairment or combination of impairments which

significantly limits the claimant's physical or mental ability to do basic work activities."  Barnhart

v. Thomas, 540 U.S. 20, 24 (2003).  See also 20 C.F.R. §§ 404.1520(c), 416.920(c); Santise v.

Schweiker, 676 F.2d 927, 927 (3d Cir. 1982).  The burden is on the claimant to prove that his

NOT FOR PUBLICATION

impairments are sufficiently severe to satisfy the standard.  See Bowen v. Yuckert, 482 U.S. 137,

146 n.5 (1987).

Third, if the claimant's impairments are severe, the ALJ must determine whether they are

listed in Appendix 1 to subpart P of the regulations or are equivalent to the impairments listed

there.  Plummer, 186 F.3d at 428; 20 C.F.R. § 404.1520.  "If the impairment meets or equals one

of the listed impairments, the claimant is conclusively presumed to be disabled."  Yuckert, 482

U.S. at 141.  See also 20 C.F.R. §§ 404.1520(d), 414.920(d).  If a claimant does not suffer from a

listed impairment or its equivalent, the analysis proceeds forward.

Fourth, the claimant must establish that he or she lacks the "residual functional capacity"

to return to his or her former work.  20 C.F.R. §§ 404.1520(e).  See also Burnett v. Comm'r of

SSA, 220 F.3d 112, 118 (3d Cir. 2000).  "Residual functional capacity is defined as what a

claimant can still do despite his limitations."  Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir.

2002).  An ALJ must evaluate the physical and mental requirements of the claimant's past work

experience to determine residual functional capacity.  20 C.F.R. §§ 404.1520(e).  See also Knepp

v. Apfel, 204 F.3d 78, 82 (3d Cir. 2000).  If the claimant can meet his or her past work demands,

then he or she is not disabled within the meaning of the Act and the ALJ proceeds to step five.

See 20 C.F.R. §§ 404.1520(a), 404.1560(b); Yuckert, 482 U.S. at 141.

Fifth, the ALJ must determine if there are "other jobs existing in significant numbers in

the national economy which the claimant can perform," taking into account his or her educational

and work experiences.  Plummer, 186 F.3d at 428.  The ALJ must demonstrate that the claimant,

given his or her age, education, and work experience, has the capacity to perform specific jobs

-10-

**NOT FOR PUBLICATION**

that exist in the national economy.  20 C.F.R. §§ 404.1520(f), 416.920(f).   The claimant bears

the burden of proof for the first four steps of the analysis and the Commissioner bears the burden

for the fifth step.  See Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986).

      The Commissioner considers all submitted evidence to evaluate a claim for disability

benefits.  If the medical evidence presented is inconsistent, then the evidence will be weighed to

reach a decision.  20 C.F.R. § 404.1527.  In reviewing a decision by the Commissioner, a court

gives greater weight to the findings of a treating physician than to the findings of a physician who

has examined a claimant only once or not at all.  Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir.

1993); 20 C.F.R.§ 404.1527(d).  Controlling weight is given when a treating physician's opinion

is  "well supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(d)(2).  The length

and frequency of treatment are also considered, as is a doctor's familiarity with the impairment.

20 C.F.R. § 404.1527(d)(2)(I)-(ii).  In addition, the more evidence produced in support of a

medical opinion, the greater the weight it will receive.  20 C.F.R. § 404.1527(d)(3).

      An ALJ may not ignore a claimant's subjective complaints of pain when evaluating a

disability claim.  Dorf v. Bowen, 794 F.2d 896 (3d Cir. 1986).  Although there must be objective

medical evidence of a condition which could produce pain, objective evidence of pain itself is

not required.  Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984). The Third Circuit

requires: (1) that subjective complaints of pain be seriously considered, even where not fully

confirmed by objective medical evidence; (2) that subjective pain may support a claim for

disability benefits and may be disabling; (3) that when such complaints are supported by medical

NOT FOR PUBLICATION

evidence, they should be given great weight; (4) that where a claimant's testimony as to pain is

reasonably supported by medical evidence, the ALJ may not discount a claimant's pain without

contrary medical evidence.  Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985).


**DISCUSSION**

The ALJ found that Ms. Smalls had not engaged in substantial activity since April 8,

1997 and found that she had "severe hypertension, degenerative arthritis of the knee and

hypocholesteremia," which had lasted for at least twelve months.  (Tr. 17-18, 22.)  The ALJ then

concluded that Ms. Smalls was not per se disabled because her impairments were not listed in, or

medically equal to the impairments listed in, Appendix 1, Subpart P, Regulations No. 4.  (Tr. 18,

22.)

The ALJ proceeded to the fourth step of the inquiry and concluded that Ms. Smalls did

not have the residual functional capacity to perform her past work as a laundry worker or a home

health aide.  (Tr. 22-23.)  Nevertheless, she retained the "residual functional capacity to perform

the physical exertion and nonexertional requirements of work except for: lifting greater than five

pounds frequently or ten pounds occasionally; standing and/or walking more than 2 hours;

climbing; kneeling and crouching."  (Tr. 21-22.)  The ALJ concluded that she was capable of a

full range of sedentary work, so long as she could avoid climbing, kneeling, and crouching.  The

ALJ also found that Ms. Smalls' subjective complaint's were inconsistent with her daily activities

and "unsupported by the objective medical evidence, and found not to be as debilitating" as she

alleged.  (Tr. 22.)

NOT FOR PUBLICATION

Because Ms. Smalls was unable to perform her past occupations, the ALJ proceeded to determine whether there existed jobs Ms. Smalls was still capable of performing.  Considering her age, education, and work experience in light of Rule 201.18 of Table No. 1, Appendix 2, Subpart P, Regulations No. 4, he concluded that Ms. Smalls was not disabled under the Social Security Act because her "capacity for the full range of sendentary work has not been significantly compromised by her . . . nonexertional limitations."  (Tr. 16, 21-23.)

Ms. Smalls challenges the Commissioner's decision on several grounds.  First, she alleges that the ALJ failed to fully or fairly evaluate her individual and combined severe impairments. (Pl.'s Br. at 12-16.)  Second, she asserts that the ALJ failed to properly evaluate her subjective complaints of pain.  Id. at 16-20.  Third, she claims that the ALJ erred in evaluating her Residual Functional Capacity.  Id. at 20-25.  Fourth, she maintains that the ALJ erred in applying the Medical-Vocational Rules.  Id. at 25-26.  Finally, she argues that the Commissioner failed to provide a final exhibit list in violation of HALLEX 1-2-6-30 and failed to incorporate a subsequent, fully favorable ALJ decision and accompanying exhibit file.  Id. at 26-27.

## I. The ALJ's Evaluation of Plaintiff's Individual and Combined Severe Impairments

Plaintiff contends that the ALJ erred in failing to categorize the pain she experienced in her knees, legs, arms, hands, right ankle and right hip as severe impairments.  (Pl.'s Br. at 13-16.) A severe impairment is defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520, 416.920.  The burden is on the claimant to prove that his or her impairments satisfy the standard.  Pearson v. Barnhart, 380 F.

-13-

NOT FOR PUBLICATION

Supp. 2d 496, 504 (D.N.J. 2005) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)).

### A. The ALJ's Findings Relating to Plaintiff's Knees

Ms. Smalls argues that the ALJ erred by only finding that she suffered from arthritis of one knee, not both. The ALJ found "the claimant has medically determinable impairments involving: hypertension, degenerative arthritis of the knee and hypocholesteremia." (Tr. 17.) Arguably the ALJ's stated conclusion regarding plaintiff's "arthritis of the knee" is ambiguous, because it is unclear whether the ALJ is referring to one or both knees. This Court finds that, to the extent the ALJ's findings regarding plaintiffs knees were unclear, the ambiguity can be dismissed as harmless error.

Evidence in the record suggests that the osteoarthritis in both knees could have constituted severe impairments. Dr. Goldberg, plaintiff's treating physician, opined that plaintiff suffered from osteoarthritis of her knees, though more severe in the right. (Tr. 292, 294.) Dr. Bagner described "degenerative arthritis," a limited range of motion, small effusions, and crepitus upon movement in both knees. (Tr. 190-91.) Dr. Glorioso stated that Ms. Smalls had a "history of degenerative joint disease in her knees." (Tr. 188-89.) Dr. Yung indicated that x-ray evidence revealed "slight narrowing along the medial [sic] aspect of both knees." (Tr. 334.) Drs. Briski and Miranda also found that plaintiff had "bilateral knee arthritis" and noted a decreased range of motion in both knees. (Tr. 141.)

However, this ambiguity of the ALJ's conclusion is "harmless error," as it was "nonprejudicial to the claimant" and "irrelevant to the ALJ's ultimate disability conclusion." See Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006). The ALJ's ultimate conclusion

-14-

NOT FOR PUBLICATION

that plaintiff was capable of unskilled sedentary work with a number of postural limitations

would not have changed had he found the plaintiff to have arthritis in either one or both knees.

### B.  Remaining Asserted Impairments did not Constitute Severe Impairments

Ms. Smalls also asserts that the pain and limitations in her hands, legs, back, right ankle,

and right hip were not properly considered by the ALJ.  (Pl.'s Br. at 12-16.)  However, nothing in

the record supports the conclusion that she made the requisite showings to demonstrate that these

pains and symptoms constituted severe impairments.  When she complained of pain in the joints

in her hand and her back during a visit to Dr. Goldberg's office in October 1997 the records state

that there was "no recommended therapy given" for these symptoms.  (Tr. 264, 293.)   Records

from a doctor's visit on November 2, 1998 also indicate that neither tenderness nor swelling were

found in plaintiff's right ankle or hand joints, despite her complaints of pain.  (Tr. 308.)

In addition,  Dr. Bagner's medical report revealed that the plaintiff had no motor or

sensory abnormalities and normal range of movement in her upper extremities.  He reported that

the plaintiff's hips had a normal range of movement, while her back had "normal flexion,

extension and lateral flexion."  Dr. Bagner also found that she could make a fist and could

oppose the thumbs bilaterally.  Dr. Bagner also found that there were no sensory abnormalities in

her lower extremities.  Dr. Bagner also found that plaintiff's "ankles are stable and show a normal

range of movement."  (Tr. 190-91.)

Dr. Karen Yung found no swelling or tenderness to the hands.  (Tr. 17, 305.)  Dr. Yung

indicated that though both hands had a slightly weakened grasp, Ms. Smalls was able to

frequently engage in simple grasping and continuously engage in fine manipulation with her

NOT FOR PUBLICATION

hands.  (Tr. 300-01.)  Dr. Yung's records reflect that the plaintiff complained of pain in hands and

right ankle, but provide no specific diagnostic findings.  (Tr. 304-05.)

### C. Conclusion

The ALJ's findings were supported by substantial evidence.  While his findings regarding

Ms. Smalls' knees were unclear, this ambiguity was a harmless error.  The additional

impairments asserted by Ms. Smalls did not have sufficient support in the record to have

warranted consideration by the ALJ.

## II.  The ALJ's Assessment of Ms. Smalls' Subjective Complaints

Ms. Smalls argues that the ALJ failed to properly evaluate her subjective complaints.

(Pl.'s Br. at 16-20.)  It is the ALJ's responsibility to assess the credibility of all symptoms,

including "pain, and the extent to which these symptoms  can be reasonably be accepted as

consistent with the medical evidence and other evidence."  20 C.F.R.§§ 404.1529, 416.929.

To properly evaluate plaintiff's pain and symptoms, the ALJ must engage in a two-step

process.  See SSR 96-7p.  First, the ALJ "must consider whether there is an underlying medically

determinable physical or mental impairment . . . that could reasonably be expected to produce the

individual's pain or other symptoms."  Id.  Second, once this impairment has been shown, the

"ALJ must evaluate the intensity, persistence and limiting effects of the individual's symptoms to

determine the extent to which these symptoms limit the individual's ability to do basic work

activities."  Id.  An ALJ may also consider the following factors when assessing the credibility of

an individual's statements:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;

NOT FOR PUBLICATION

> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529; see also SSR 96-7p.  An ALJ may reject a claimant's subjective testimony for lack of credibility so long as it is explained why the testimony is being rejected. See 20 C.F.R.§§ 404.1529;  Hall v. Comm'r of Social Security, 218 Fed. Appx. 212, 215 (3d Cir. 2007) (citing Shaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999)).

This Court has reviewed the record and concluded that the ALJ's conclusions were supported by substantial evidence.  Though the ALJ found that the plaintiff suffered from arthritis, he concluded that "the claimant's symptoms of arthritic pain and functional limitations are not as debilitating as alleged."  (Tr. 20.) The ALJ found the record indicated that the plaintiff experienced "hypertension without end organ damage, and radiographic studies show only slight narrowing of the knee joints." (Tr. 20.)

The ALJ also considered the factors enumerated in Social Security Ruling 96-7p to determine whether the Ms. Smalls' subjective complaints were credible and reached the conclusion they were not.  He considered her daily activities, noting that she testified to using public transportation, driving to her doctor's appointments and shopping.  (Tr. 20.)  Ms. Smalls testified that she flew to Georgia to attend her mother's funeral and drove about once a week to go to the doctor or to take her daughter shopping.  (Tr. 33-4.)

-17-

**NOT FOR PUBLICATION**

She also stated that she wrote as much as possible and often helped her grandchildren with their homework.  (Tr. 20, 39.)  The ALJ reasoned that "these varied activities do not demonstrate total debilitating pain and incapacitation, but rather indicate a greater ability to function." (Tr. 20.)  He concluded that "her symptoms do not interfere with her ability to maintain and sustain concentration" (Tr. 20.)

The ALJ also found the "use and level of treatment" to be inconsistent with the plaintiff's allegations of severe pain. (Tr. 20.)  Ms. Smalls' doctors made no referrals or recommendations to obtain any other methods of treatment, such as an assistive ambulatory device, physical therapy, pain management specialists, or surgical intervention.  The ALJ noted that she controlled her symptoms through the use of Tylenol and Ibuprofen, medication that is traditionally "used for minor to moderate pain." (Tr. 20.)

The ALJ considered Ms. Smalls' subjective complaints in light of the medical evidence, treatment history and all other evidence in the record and concluded that the plaintiff's subjective complaints of pain were inconsistent with the totality of the evidence in the record.  This court finds his conclusion was supported by substantial evidence.

### III.  The ALJ's Evaluation of Evidence Relating to Ms. Smalls' Residual Functional Capacity

Residual Functional Capacity ("RFC") is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of SSA, 220 F.3d 112, 121 (3d Cir. 2000) (citing Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); See 20 C.F.R. §§ 404.1545(a).  Determining a claimant's residual functional capacity is the exclusive responsibility of the ALJ.  See 20 C.F.R. §§ 404.1527(e), 404.1546, 416.927(e).

-18-

NOT FOR PUBLICATION

The ALJ is required to consider all evidence, medical and non-medical, presented to him, Burnett, 220 F.3d 112 at 121-22, and his assessment of a claimant's RFC must "be accompanied by a clear and satisfactory explanation on the basis on which it rests." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) (citing Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). Furthermore, "an explanation from the ALJ of the [reason(s)] why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." Cotter, 642 F.2d at 706; see also Burnett, 220 F.3d at 121.

The ALJ determined that Ms. Smalls had an RFC that was equivalent to unskilled sedentary work.  (Tr. 21.) Sedentary work involves:

> [L]ifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

See 20 C.F.R. §§ 404.1567(a), 416.967(a).  Unskilled work includes "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength." 20 C.F.R. § 404.1568(a).  In addition, the ALJ found that plaintiff was "to avoid climbing, kneeling, and crouching."  (Tr. 21.)

Ms. Smalls argues that the ALJ erred in evaluating her RFC because the ALJ failed to fairly or fully evaluate her exertional and non-exertional impairments  (Pl.'s Br. at 21, 25.)  She also argues that the ALJ failed to obtain updated medical evidence after she was evaluated by Dr. Raymond Briski, as allegedly required by SSR 96-6p.  (Pl.'s Br. at 22.)

**A. The ALJ's Evaluation of Ms. Smalls' Exertional Limitations**

NOT FOR PUBLICATION

Exertional limitations are those impairments and related symptoms that interfere with the "ability to meet the strength demands of the jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)."  20 C.F.R. §§ 404.1569a(b).  The ALJ concluded that the plaintiff had the ability to "lift up to 5 pounds frequently, 10 pounds occasionally; sit up to 6 hours, stand up to two hours, and walk up to two hours."  (Tr. 21.)  Ms. Smalls asserts that the ALJ failed to consider the physician opinions and reports indicating her limited ability to stand and walk, as she walks with an "abnormal gait."  (Pl.'s Br. at 23.)  She also asserts that medical reports confirmed that she could only sit at intervals of less than an hour.  Id.

The Court finds that the ALJ's evaluation of the exertional limitations of the plaintiff was supported by substantial evidence.  First, his conclusions regarding stand and walk were supported by evidence in the record.  Drs. Briski, Miranda, and Yung all concurred that Ms. Smalls could sit for six hours per day.  Dr. Yung opined that plaintiff could stand and walk for only one hour each per day, while Drs. Briski and Miranda felt that she could stand and walk for at least two hours per day.  The ALJ awarded the findings of Dr. Yung "some evidentiary weight" because they were "fairly consistent" with the record, but awarded the opinions of Dr. Briski and Dr. Miranda "significant evidentiary weight," because they were deemed experts in the area of Social Security evaluations and provided clinical findings to support their conclusions.  (Tr. 19-20.)  The ALJ also considered the findings of Dr. Goldberg, who opined that Ms. Smalls had difficulty standing and ambulating.  (Tr. 18.)

The ALJ's conclusions regarding Ms. Smalls' ability to lift and carry objects were also supported by substantial evidence.  Drs. Briski and Miranda determined that she could

-20-

NOT FOR PUBLICATION

occasionally lift or carry up to ten pounds, but could frequently lift or carry less than ten pounds. (Tr. 20, 141.)  Dr. Yung opined that the plaintiff could never lift any amount of weight and could occasionally carry twenty pounds. (Tr. 300.)  Plaintiff herself testified that she could "just barely" lift a gallon of milk.  (Tr. 40.)  The ALJ explained that he awarded Dr. Yung's opinion less evidentiary weight, as it was inconsistent with the reports of Drs. Briski and Miranda, and Ms. Smalls' own testimony.  (Tr. 20, 40.)

### B. The ALJ's Evaluation of Ms. Smalls' Nonexertional Limitations

Ms. Smalls also claims that the ALJ failed to properly consider her nonexertional limitations, which are those "restrictions imposed by your impairments and related symptoms . . . that affect only your ability to meet the demands of jobs other than the strength demands."  20 C.F.R. §§ 404.1569a(c).  Nonexertional limitations include, but are not limited to, difficulty in seeing, hearing, performing manipulative or postural functions, concentrating, or understanding detailed instructions.  See id.  Ms. Smalls alleges that the ALJ failed to fully consider such limitations, including: climbing, kneeling, and crouching, bending, stooping, balancing, gripping and manipulating and the ability to concentrate.  (Pl.'s Br. at 24-25.)

The Court finds some merit in this argument.  The ALJ concluded that the Ms. Smalls was "to avoid climbing, kneeling, and crouching."  (Tr. 21.)  The ALJ failed to fully discuss the findings of Drs. Yung, Briski and Miranda that Ms. Smalls could only occasionally stoop, (Tr. 19, 142, 302.), and the findings Drs. Briski and Miranda that she could only occasionally balance.  (Tr. 19, 142.)  Courts require "not only an expression of the evidence [the ALJ] considered which supports the result, but also some indication of the evidence which was

NOT FOR PUBLICATION

rejected." Cotter, 642 F.2d at 705.  "There is a particularly acute need for some explanation by the ALJ when s/he had rejected relevant evidence in the record." Id. at 706.

     In contrast, the ALJ discussed evidence that supported the conclusion that Ms. Smalls' limited gripping and manipulating capacity failed to constitute a postural limitation.  He noted that Dr. Yung opined that she had the ability to "perform fine manipulation continuously" and could "grasp with upper extremities frequently."  (Tr. 19.)   The ALJ also explained why he did not credit Ms. Smalls' alleged difficulty concentrating: her "acknowledgment that she assists and supervises her grandchildren with their homework indicates that her symptoms do not interfere with her ability to maintain and sustain concentration."  (Tr. 20.)

     The ALJ included no similar discussion of his findings with respect to Ms. Smalls' ability to stoop and balance.  Accordingly, this Court finds that remand is appropriate to fully evaluate her nonexertional limitations.  If the ALJ rejects evidence pertaining to her nonexertional limitations, the rejection should be accompanied by an explanation.

### C.  ALJ's Failure to Obtain an Updated Medical Opinion

     Ms. Smalls asserts that the ALJ never appointed a physician to assess the plaintiff's RFC in light of the entire medical history, in accordance with SSR 96-6p.  (Pl.'s Br. at 22-23.)  She argues that Dr. Briski reviewed the record and determined her RFC on June 27, 1997, before most of the evidence was submitted.  (Pl.'s Br. at 23.)

     A thorough reading of Social Security Ruling 96-6p establishes that an ALJ "must obtain an updated medical opinion from a medical expert" in two situations:

> When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported

NOT FOR PUBLICATION

> in the case record suggest that a judgment of equivalence may be reasonable; or
> when additional medical evidence is received that in the opinion of the administrative law
> judge or the Appeals Council may change the State agency medical or psychological
> consultant's finding that the impairment(s) is not equivalent in severity to any impairment
> in the Listing of Impairments.

SSR 96-6p; see Szepanski v. Barnhart, No. 02-4011, 2003 WL 23469294, at *6 (E.D.Pa. 2003).

The ALJ granted Drs. Briski and Miranda's June 27, 1997 report considerable evidentiary weight because both doctors were medical examiners from the state agency. Such doctors are considered experts in the field of social security disability. See 20 C.F.R. §§ 416.927, 404.1527; see also Myers v. Barnhart, 57 Fed.Appx. 990, 995-96 (3d Cir. 2003). The ALJ also noted that because these examiners supported their conclusions with specific clinical findings, their findings were entitled even more weight. (Tr. 19.)

The Court finds that none of the evidence that was submitted after this report was issued warranted an updated medical opinion under SSR 96-6p. Doctor Goldberg's July 18, 1997 letter, Dr. Glorioso's August 12, 1997 letter, and Dr. Yung's November 2, 1998 medical report did not warranted a substantial change in the state agency findings with respect to the Listing of Impairments because their findings were essentially similar to Dr. Briski's. No updated medical opinion was necessary.

**IV. The ALJ's Reliance on the Medical Vocational Rules and the Social Security Rulings**

At step five, the ALJ has the burden of proving that a plaintiff, given his or her age, education and work experience, can obtain other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920, 404.1560. The ALJ may rely on medical-vocational guidelines, commonly known as "grids," such as those contained in 20 C.F.R. Pt. 404, Sub. P. App. 2, to determine

NOT FOR PUBLICATION

whether a sufficient number of jobs exist for a person with claimant's diminished capacity.  See

Heckler v. Campbell, 461 U.S at 460, 103 S.Ct. at 1954 (1983).

Here, the ALJ determined that Ms. Smalls was forty-nine, had a ninth grade education

level and unskilled work experience.  (Tr. 21.)  He concluded that, "in light of these vocational

factors and the claimant's residual functional capacity for sedentary work, Rule 201.18 of Table

No. 1, Appendix 2, Subpart P, Regulations No. 4" provided the framework for a finding of "not

disabled."  (Tr. 21.)  The ALJ also noted that "the claimant's capacity for full range of sedentary

work has not been significantly compromised by her additional nonexertional limitations."  (Tr.

21.)

Ms. Smalls asserts that the ALJ improperly applied the Medical Vocational Rules because

she had nonexertional limitations that required the him to obtain "the testimony of a vocational

expert or other similar evidence" instead of relying on the medical-vocational guidelines

("grids"). (Pl.'s Br. at 26.)

Two Third Circuit decisions are relevant.  In Sykes v. Apfel, the Third Circuit held that

"the Commissioner cannot determine that a claimant's nonexertional impairments do not

significantly erode his occupational base under the medical-vocational guidelines without either

taking additional vocational evidence establishing as much or providing notice to the claimant of

his intention to take official notice of this fact."  228 F.3d 259, 261 (3d Cir. 2000).  The Third

Circuit expanded upon its Sykes holding in Allen v. Barnhart, stating that "if the Secretary

wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the

SSR is probative as to the way in which the exertional limitations impact the ability to do work,

-24-

NOT FOR PUBLICATION

and thus, the occupational base."   Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005).  The

Allen court declared, "if an agency will rely on rules as a substitute for individualized

determination, and thus relieve the agency from the burden of producing evidence, we think

advance notice should be given."  Id.

Though Sykes and Allen were decided after the ALJ's decision was handed down in

1999, the Court will apply their holdings here.  See Thorpe v. Housing Authority of City of

Durham, 393 U.S. 268, 282 (1969) (explaining "an appellate court must apply the law in effect at

the time it renders its decision"); see also Segura v. Frank, 630 So. 2d 714, 725 (La. 1994), cert.

denied 511 U.S. 1142 (1994) ("Where the law has changed during the pendency of a suit and

retroactive application of the new law is permissible, the new law applies on appeal even though

it requires reversal of a trial court judgment which was correct under the law at the time it was

rendered.").  In Kaiser Alumnum & Chem. Corp v. Bonjorno, 494 U.S. 827, 837 (1990), the

Supreme Court articulated two exceptions to this general rule.  The new law should not be

applied "where retrospective application would result in manifest injustice to one of the parties or

where there is clear congressional intent to the contrary."  Id.  Neither of these exceptions is

applicable here.

In evaluating the impact of the nonexertional limitations on the plaintiff's occupational

base, the ALJ relied on Social Security Ruling 96-9p to conclude that plaintiff's postural

limitations would not compromise her ability to engage in unskilled sedentary work.  (Tr. 21.)

However, the record does not indicate any notice was provided to the plaintiff regarding the

ALJ's intention to rely on the Social Security Rulings instead of taking the testimony of a

-25-

NOT FOR PUBLICATION

vocational expert.  Accordingly, remand is appropriate to permit the ALJ to evaluate the

plaintiff's occupational base in accordance with the Third Circuit's rulings in <u>Sykes</u> and <u>Allen</u>.

## V.  The Commissioner's Failure to Provide a "Final Exhibit" List

The plaintiff requests that the case be remanded to give the Commissioner an opportunity

to prepare a complete exhibit list in accordance with HALLEX I-2-6-30.  This rule states: "If the

ALJ issues a partially favorable or unfavorable decision, the Hearing Office ("HO") staff must

prepare a final exhibit list on form HA-540 (Exhibit List) and place it in the administrative record

with the ALJ's decision."  HALLEX I-2-6-30, 1993 WL 643026 (S.S.A.).  However, the

HALLEX provisions lack the force of law and do not provide judicially enforceable rights. <u>See</u>

<u>Bordes v. Comm'r of Soc. Sec.</u>, No. 06-2197, 2007 WL 1454289, at *4 (3d Cir. 2007) (citing

<u>Schweiker v. Hansen</u>, 450 U.S. 785, 789 (1981)).  In light of the duration of this case, ordering a

remand to generate a final exhibit list would be inappropriate.

## VI.  The Subsequent Favorable ALJ Decision

Finally, Ms. Smalls argues that remand is appropriate to permit the Commissioner to

review the subsequent August 12, 2002 ALJ decision ("2002 ALJ Decision") that found the

plaintiff "disabled" as of January 26, 1999.  (Pl.'s Br. at 27.)  This Court cannot remand the case

for review in light of evidence not before the ALJ without first applying the standard articulated

in <u>Matthews</u> for a remand to be appropriate.  <u>See Matthews</u>, 239 F.3d at 593.

Though the 2002 ALJ decision is new, it is not material.  The plaintiff fails to articulate

whether the 2002 ALJ decision is based on medical assessments relevant to the period for which

the benefits were denied.  <u>See Morgan v. Sec'y of HHS</u>, CIV.A.01-244-MPT, 2002 WL 732091,

NOT FOR PUBLICATION

at *9 (D.Del 2002).  The amount of evidence present in the record that was generated after the

initial unfavorable decision at issue here suggests that the second decision was not based on the

same evidence.  (<u>See</u> Tr. 388-410).  The 2002 ALJ decision sheds little light on whether plaintiff

experienced similar disabilities and limitations during the time period at issue, April 8, 1997 to

January 25, 1999.  <u>See</u> <u>Morgan</u>, 2002 WL 732091, at *9  (citing <u>Wilson v. Apfel</u>, 179 F.3d 1279

(11th Cir. 1999)).  Remanding the case to consider the subsequent favorable 2002 ALJ decision

would be inappropriate.

<b>CONCLUSION</b>

It is on this 2nd day of August, 2007,

ORDERED that for the reasons discussed in the accompanying opinion, the ALJ's

decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

On remand, the ALJ should fully evaluate the plaintiff's nonexertional limitations and articulate

his reasoning for accrediting or rejecting the evidence that is considered.  If additional

nonexertional limitations are found, their impact on plaintiff's ability to work in the national

economy must also be considered.  Generally, the ALJ should also reconsider plaintiff's ability to

work in the national economy in accordance with the Third Circuit's holdings in <u>Sykes</u> and <u>Allen</u>.

s/ William H. Walls
United States Senior District Judge